**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **CECIL C. JOHNSON,** )<br>)<br>     **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**PHIL BREDESEN, Governor of the** )<br>**State of Tennessee; GEORGE M.** )<br>**LITTLE, Commissioner of the** )<br>**Tennessee Department of Corrections** )<br> **and RICKY BELL, Warden Riverbend** )<br>**Maximum Security Institution,** )<br>**in their official capacities,** )<br>)<br>     **Defendants.** ) | **Case No. 3:09-1133**<br>**Judge Echols** |

## ORDER

This is an action brought under 42 U.S.C. § 1983 by Plaintiff Cecil M. Johnson, an inmate at

the Riverbend Maximum Security Institution in Nashville, Tennessee, who is scheduled to be

executed by the State of Tennessee at 1:00 a.m. CST on Wednesday, December 2, 2009. The

Governor of Tennessee, the Honorable Phil Bredesen, denied Plaintiff's petition for executive

clemency on November 25, 2009.

Plaintiff filed a Verified Complaint, an Application to *Proceed In Forma Pauperis* (Docket

Entry No. 2),[1] and a combined Motion for Temporary Restraining Order and Preliminary Injunction

(Docket Entry No. 3) in this Court on the evening of November 25, 2009. The State has filed a

---

[1]Plaintiff's Application to proceed *in forma pauperis* was granted by Order dated
November 30, 2009 (Docket Entry No. 13).

1

response in opposition to the Motion (Docket Entry No. 7), and Plaintiff has filed a reply (Docket Entry No. 10). The Court conducted a hearing on Plaintiff's Motion on November 30, 2009.

In his Verified Complaint, Plaintiff seeks only injunctive relief. Specifically, he claims that his execution under the unique facts and circumstances of this case would constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, § 16, of the Tennessee Constitution.

Plaintiff was sentenced to death on three counts of first degree murder on January 20, 1981. The sentence was imposed after his convictions in criminal court in Davidson County, Tennessee for a robbery and triple murder at Bob Bell's Market in Nashville, Tennessee on July 5, 1980. On May 3, 1982, the convictions and sentence were upheld by the Tennessee Supreme Court on direct appeal, and the United States Supreme Court denied certiorari on October 4, 1982. State v. Johnson, 632 S.W.2d 542 (Tenn.), cert. denied, 459 U.S. 882 (1982).

Plaintiff filed his first petition for post-conviction relief on February 9, 1983. After a five day evidentiary hearing in the trial court which resulted in an order denying his petition, Plaintiff appealed to the Tennessee Court of Criminal Appeals and was successful on a claim that the prosecution attempted to minimize the jurors' responsibility in imposing the death penalty, but the Tennessee Supreme Court reversed the appeals' court decision and reinstated the judgment of the trial court on September 14, 1990, Johnson v. State, 797 S.W.2d 578 (Tenn. 1990), and denied a second petition to rehear.

Plaintiff filed a second petition for post-conviction relief in state court on February 28, 1995 after his first federal petition for habeas corpus relief in this Court was dismissed without prejudice for failure to exhaust state remedies. This second petition for post-conviction relief was denied by

the state Court of Criminal Appeals in State v. Johnson, 1997 WL 738586 (Tenn. Crim. App. 1997), and the Tennessee Supreme Court denied Plaintiff's application to appeal on October 5, 1998.

On January 18, 1999, Plaintiff filed his second federal habeas petition under 28 U.S.C. § 2254 in this Court. The Court granted the State's Motion for Summary Judgment, and the action was dismissed on September 30, 2002. Plaintiff's motion to alter or amend the Court's Order of dismissal was granted, but this Court reaffirmed dismissal of the action in 2004.

On April 29, 2008, the Sixth Circuit affirmed this Court's dismissal of Plaintiff's federal habeas petition, and the Supreme Court denied Plaintiff's certiorari petition on March 30, 2009. Johnson v. Bell, 525 F.3d 466 (6th Cir. 2008), cert. denied, 129 S.Ct. 1668 (2009).

On July 29, 2009, the Tennessee Supreme Court entered an order directing that Plaintiff's execution take place on December 2, 2009. In doing so, the court rejected Plaintiff's contention that the State's Motion to Set Execution Date should be denied "because the excessive delay in carrying out the capital sentence and the arbitrariness and capriciousness of the sentence" violates both the United States and the Tennessee Constitutions. State v. Johnson, M1981-00121-SC-DPE-DD (Tenn. July 21, 2009).

On November 25, 2009, seven days before the scheduled execution and on the evening before the Thanksgiving holiday, Plaintiff filed the presently pending Verified Complaint and request for injunctive relief in this Court under 42 U.S.C. § 1983. Plaintiff asserts in his Verified Complaint that he has spent almost twenty-nine years on death row and that, because of the unique facts and circumstances of this case, his execution at this time (or any time hereafter) would amount to cruel and unusual punishment under the constitutional provisions mentioned above, and, therefore, his execution should be permanently enjoined.

In response, the State argues that Plaintiff's present request for a temporary restraining order and preliminary injunction, although brought under the guise of a Section 1983 action, is the functional equivalent of a second or successive habeas petition and therefore, this Court lacks jurisdiction to entertain the motion under 28 U.S.C. § 2244(b). This Court agrees with the State's position.

Title I of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") contains certain gatekeeping provisions that restrict a prisoner's ability to bring new and repetitive claims in "second or successive" habeas corpus actions.[2] Specifically, 28 U.S.C. § 2244 provides in relevant part:

> (b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless–
>
>> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no

---

[2]Plaintiff initially filed a federal habeas petition in 1991, before the enactment of AEDPA. However, that action was dismissed on procedural grounds for failure to exhaust state remedies and his constitutional claims were not properly before this Court until the filing of his 1999 habeas corpus petition, long after the enactment of AEDPA. Thus, the gatekeeping requirements of AEDPA apply to this case. See, Slack v. McDaniel, 529 U.S. 473, 486-488 (2000).

4

> reasonable factfinder would have found the applicant
> guilty of the underlying offense.
>
> (3)(A) Before a second or successive application permitted by this
> section is filed in the district court, the applicant shall move in the
> appropriate court of appeals for an order authorizing the district court
> to consider the application.

28 U.S.C. § 2244(b).

Plaintiff styles his claim as seeking redress for the alleged violation of a constitutional right under Section 1983, and it is properly characterized as such. "[H]owever, § 1983 must yield to the more specific federal habeas statute, with its attendant procedural and exhaustion requirements, where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence" because "[s]uch claims fall within the 'core' of habeas corpus and are thus not cognizable when brought pursuant to § 1983." Nelson v. Campbell, 541 U.S. 637, 643 (2004)(citations omitted). "By contrast, constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core and may be brought pursuant to § 1983 in the first instance." Id.

In Nelson, a unanimous Supreme Court held that a prisoner could bring a Section 1983 action in which he claimed that the procedure to be used in his execution[3] violated the Eighth Amendment, without running afoul of the gate-keeping provisions of 28 U.S.C. § 2244. The challenge there was not to the constitutionality of the sentence itself (death by lethal injection), but rather the particular manner in which the sentence (execution) would be carried out. "A suit seeking to enjoin a particular means of effectuating a sentence of death does not directly call into question the 'fact' or 'validity'

---

[3]The prisoner in Nelson was informed that, because he had collapsed veins due to prolonged drug usage, the execution team was intending to use a "cut-down procedure" which required the cutting of muscle and fat so as to provide access to a vein.

Case 3:09-cv-01133   Document 17   Filed 11/30/09   Page 5 of 9 PageID #: 284

of the sentence itself – by simply altering its method of execution, the State can go forward with the sentence." Id. 644.

Subsequently in Hill v. McDonough, 126 S.Ct. 2096 (2006), the Supreme Court, in another unanimous decision, held that the district court wrongfully treated a prisoner's Section 1983 action as the functional equivalent of a second or successive habeas petition where the prisoner challenged the constitutionality of a three-drug sequence that Florida officials planned to use in his execution. In doing so, the Court found the action to be "controlled by the holding in Nelson" because in the case before it, as in Nelson, plaintiff's "action if successful would not necessarily prevent the State from executing him by lethal injection" and "a grant of injunctive relief could not be seen as barring the execution of Hill's sentence." Id. at 2102.

This case is markedly different from both Nelson and Hill. Plaintiff is not challenging the conditions of his confinement as claimed by the Plaintiff, or the method or manner of carrying out his punishment (execution). Instead, Plaintiff is challenging the "fact and validity" of his sentence by claiming that his death sentence is unconstitutional due to the passage of time.[4] In other words, because it has taken so long to maneuver through the legal appeals process, and Plaintiff has been forced to endure the physical and psychological hardships of living on death row during this ordinate delay, much of which was allegedly caused by the state, the Plaintiff has suffered cruel and unusual punishment and is entitled to an injunction prohibiting his execution.

---

[4]A constitutional challenge to the carrying out of a death sentence on the grounds that years on death row make the ultimate punishment cruel and unusual is commonly called a "Lackey claim," given that such a claim is generally based upon Justice Stevens' Memorandum respecting the denial of certiorari in Lackey v. Texas, 514 U.S. 1045 (1995) (Stevens, J., respecting denial of certiorari).

6

No matter how it is couched, Plaintiff's claim lies at the very core of habeas corpus because, if successful, Plaintiff will evade what the trial court and various appellate courts have determined to be a lawfully imposed sentence of death. In essence, Plaintiff is seeking to strike down the death sentence and change the sentence drastically to something much less.

In <u>Allen v. Ornoski</u>, 435 F.3d 946 (9th Cir. 2006), the Ninth Circuit was presented with a habeas petition and motion for stay of execution filed on the eve of execution in which the petitioner claimed that his continued confinement on death row for twenty-three years under "horrific" conditions violated the Eighth Amendment. The Ninth Circuit found that the filings were an "abuse of the writ" and a "second or successive" habeas petition within the meaning of 28 U.S.C. § 2244 such that the district court was required to dismiss the claim. In reaching its conclusion, the Ninth Circuit wrote:

> Allen brings his <u>Lackey</u> claim for the first time in this second habeas petition. A petition for review of a new claim that could have been raised earlier may be treated as the functional equivalent of a second or successive petition for a writ of habeas corpus. . . .
>
> Allen could have brought his <u>Lackey</u> claim in his first habeas petition in 1988, when he had already been on death row for six years, in his first amended habeas petition, when he had been on death row for nine years, or at some other point during the course of the proceedings on his first habeas petition in federal court from 1993 to 2005.

Id. at 957-958 (citation omitted). The Ninth Circuit also rejected petitioner's argument that his <u>Lackey</u> claim could not have been brought earlier because it was not ripe, writing:

> [A] <u>Lackey</u> claim does not become ripe only after a certain number of years or as the final hour of execution nears. There is no fluctuation or rapid change at the heart of a <u>Lackey</u> claim, but rather just the steady and predictable passage of time. As the district court noted, that the passage of time makes his <u>Lackey</u> claim stronger is irrelevant to ripeness, because the passage of time strengthens any <u>Lackey</u> claim. Allen's initial execution date was in 1988, and by the time habeas proceedings resumed in federal court in 1993, he already had been suffering the psychological distress of death row and impending execution for eleven years. Those proceedings

7

did not end until 2005. Allen could have sought to amend his petition to state a <u>Lackey</u> claim at any time during their pendency. Allen fails to show adequate cause as to why he delayed raising his <u>Lackey</u> claim.

<u>Id</u>. at 958.

During oral argument, Plaintiff's counsel in this case cited <u>Stewart v. Martinez-Villareal</u>, 523 U.S. 637 (1998) for the proposition that his present claim was not ripe until the Governor denied clemency. However, <u>Stewart</u> is inapposite. There, the Supreme Court ruled that a habeas petition which raised a <u>Ford v. Wainright</u>, 477 U.S. 399 (1986) claim of mental incompetency was not a second or successive petition where it had previously been dismissed by the district court as premature. Indeed, the above-quoted language in <u>Allen</u> was in direct response to the prisoner's argument based on <u>Stewart</u> that his <u>Lackey</u> claim was not ripe until the eve of his execution.

Moreover, as the Sixth Circuit noted in <u>Alley v. Little</u>, 186 Fed. Appx. 604 (6th Cir. 2006), the Supreme Court's ruling in <u>Stewart</u> dealt with a situation where the claim had previously been dismissed without prejudice and the "lower courts had specifically left open the possibility that the defendant's <u>Ford</u> claim could proceed in a future filing." <u>Id</u>. at 607. This simply is not the situation here. Additionally, and as also observed in <u>Alley</u>, a claim of mental incompetency is subject to variance over a period of time due to the inmate's mental health. <u>Id</u>. Again, that is not the situation here.

In this case, Plaintiff could have presented his <u>Lackey</u> claim in his 1999 federal habeas petition when he had already been under the death sentence for over eighteen years,[5] or amended his petition at some point during the years that it was pending, but he did not do so. Instead, he chose to wait until

_____

[5]At that point, Plaintiff would have had the benefit of <u>Lackey</u> in which Justice Stevens set forth his position that a delay of seventeen years in carrying out a death sentence could arguably constitute cruel and unusual punishment.

8

the eve of his execution to file a Section 1983 action in federal court, a filing which this Court finds

to be a second or successive habeas petition because it challenges the very existence and validity of

his death sentence.

A district court may not consider a second or successive petition on its merits without prior

approval of the appellate court because authorization is a jurisdictional prerequisite to merit review.

Dress v. Palmer, 484 F.3d 844, 852 (6th Cir. 2007) (citing, Burton v. Stewart, 127 S.Ct. 793 (2007)).

Instead, the Sixth Circuit has instructed that "when a second or successive petition for habeas corpus

relief or § 2255 motion is filed in the district court without § 2244(b)(3) authorization from this court,

the district court shall transfer the document to this court pursuant to 28 U.S.C. § 1631." In re Sims,

111 F.3d 45, 47 (6th Cir. 1997).

Based upon the foregoing, the Court determines that Plaintiff's request for injunctive relief

is the functional equivalent of a second or successive habeas petition for which prior appellate

approval for filing is required. Accordingly, the Court finds that it LACKS JURISDICTION over this

action and the Clerk of the Court is hereby directed to FORTHWITH TRANSFER the filings in this

case to the United States Court of Appeals for the Sixth Circuit pursuant to 28 U.S.C. § 1631.

It is so ORDERED.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

9